1

2

3      **UNITED STATES DISTRICT COURT**

4      **DISTRICT OF NEVADA**

5      **\* \* \***

6      UNITED STATES OF AMERICA,                    )
                                                     )
7                          Plaintiff,                )
                                                     )
8      v.                                            )      2:07-cr-0170-JCM-LRL
                                                     )
9      CHEN CHIANG LIU and MIN LI LIU,               )      MOTIONS TO DISMISS (##91,93,96)
                                                     )
10                         Defendants.               )
                                                     )
11     ─────────────────────────────────────────────)

12                     **REPORT & RECOMMENDATION**

13            Defendants Chen Chiang Liu and Min Li Liu are under indictment on one count of

14     Conspiracy to (a) Deal in Counterfeit Currency of the United States Outside of the United

15     States, (b) Sell, Exchange, Transfer, Receive, and Deliver Counterfeit Currency, and (c)

16     Fraudulently Pass and Keep Counterfeit Currency of the United States, a violation of 18 U.S.C.

17     § 371; and one count of Fraudulently Passing and Keeping Counterfeit Currency of the United

18     States, a violation of 18 U.S.C. § 472.  The matters before the court are Chen Chiang Liu's

19     Motion to Dismiss with Prejudice for Violation of 18 U.S.C. § 3161 and or Dismiss with

20     Prejudice for Pre-Indictment Delay Pursuant to Sixth Amendment (#91) and the Memorandum

21     of Points and Authorities (#92) filed in support thereof, and Min Li Liu's Motion to Dismiss

22     with Prejudice 2nd Superseding Indictment for Violation of 18 U.S.C. § 3161 and or Dismiss

23     with Prejudice for Pre-Indictment Delay Pursuant to Sixth Amendment (#93).[1]  The court has

24     considered the motions, the government's consolidated Response (#102), and defendants'

25     Replies (##109,110).

26

        ───────────────────────────────────────────────────────────────────────

            [1]  Min Li Liu filed a duplicate Motion to Dismiss with Prejudice 2nd Superseding Indictment for Violation of 18
        U.S.C. § 3161 and or Dismiss with Prejudice for Pre-Indictment Delay Pursuant to Sixth Amendment (#96).

**BACKGROUND**

Defendants move to dismiss with prejudice Count One (Conspiracy) of the Second Superseding Indictment (#79) in this case (the "Las Vegas case") for violation of the Speedy Trial Act, 18 U.S.C. § 3161, and for pre-indictment delay under the Fifth Amendment. Chen Chiang Liu contends that the Las Vegas case is merely an extension of an action originally filed in the United States District Court for the Central District of California, Case No. 2:05-cr-805 (the "Los Angeles case"), which was dismissed by the government and whose speedy trial clock has expired. Defendants argue that there has been unwarranted protraction of the Las Vegas case in violation of their speedy trial rights, as delays occurring between the filing of the various charging instruments have not sufficiently tolled the speedy trial clock.

**I. THE LOS ANGELES CASE**

The indictment against Chen Chiang Liu in the Los Angeles case was filed on August 17, 2005. Exh. 1 to Memo (#92) at 2. The indictment charged Chen Chiang Liu with Conspiracy to Make, Deal and Possess Counterfeit United States Currency Outside of the United States in violation of 18 U.S.C. § 473, a violation of 18 U.S.C. § 371. *See* Docket Sheet in Los Angeles case; *see also* Opp'n (#102) at 4. Chen Chiang Liu first appeared before a judicial officer in the court where the charge was pending on August 22, 2005. *Id.* The Speedy Trial Act originally required that his trial commence on or before October 31, 2005. *Id.* at 3. On August 30, 2005, Chen Chiang Liu was arraigned on the indictment. *Id.* The court set a trial date of October 10, 2006, after previously granting three (3) continuances. *Id.* The parties stipulated that twenty-one (21) days would remain on Chen Chiang Liu's speedy trial clock, or until October 31, 2006. Memo (#92) at 2.

On September 14, 2006, by stipulation, the parties jointly moved to continue the trial date to August 14, 2007, excluding that period for the computation of time within which the trial must commence under the Speedy Trial Act. Exh. 1 to Memo (#92). The court excluded the

time period from October 10, 2006 until August 14, 2007 pursuant to § 3161(h)(8)(A).[2] *Id.* at 6. On or about July 5, 2007, by stipulation, the parties jointly moved to continue the trial date to November 13, 2007. Exh. 2 to Memo (#92). The time period from August 14, 2007 until November 13, 2007 was excluded pursuant to § 3161(h)(8)(A). *Id.* at 10-11. On or about October 19, 2007, by stipulation, the parties jointly moved to continue the trial date to March 4, 2008. Exh. 3 to Memo (#92). The time period of November 13, 2007 to March 4, 2008 was excluded pursuant to § 3161(h)(8)(A). *Id.* at 4. On February 4, 2008, the court again continued trial and excluded the time period from March 4, 2008 to April 8, 2008 pursuant to § 3161(h)(8)(A). Memo (#92) at 3.

On March 31, 2008, the government advised the court in the Los Angeles case that the case was going to be dismissed and the indictment superseded in the District of Nevada. Exh. 4 to Memo (#92). The government filed an Ex Parte Application for Order of Leave of Court to Dismiss Without Prejudice Pursuant to Fed. R. Crim. P. 48(a) Against Defendant Chen Chiang Liu, aka "Wilson Liu," Only, on April 3, 2008. *See* Mot. (#216) in Los Angeles case. The court granted the government's application and ordered that Chen Chiang Liu was not to be released from custody, but was to be transferred and returned forthwith by the U.S. Marshal Service to Las Vegas, Nevada, where he was to remain in custody pending trial in the Las Vegas case, pursuant to a detention order issued by Judge George W. Foley on July 31, 2007. *See*

---

[2] Section 3161(h)(8)(A) provides that the following period of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

1  Order (#217) in Los Angeles case.

2  **II. THE LAS VEGAS CASE**

3         On July 31, 2007, a Criminal Complaint (#3) was filed against Chen Chiang Liu and Min

4  Li Liu in Case No. 2:07-mj-480-GWF, charging defendants with a single count of Passing

5  Counterfeit Securities, a violation of 18 U.S.C. § 472.  Initial appearances for the defendants

6  were conducted that day.  Min. (##1,2).  Min Li Liu was released on her personal recognizance

7  with U.S. Pretrial Services supervision and conditions.  Min. (#2).  Chen Chiang Liu was

8  ordered detained and remanded to custody.  Min. (#1).

9         On August 1, 2007, an Indictment (#13) was filed against Chen Chiang Liu and Min Li

10  Liu in Case No. 2:07-cr-170-JCM-LRL, charging them with one count of Passing, Possessing

11  and Concealing Counterfeit Securities, a violation of 18 U.S.C. § 472, and one count of

12  Conspiracy to Fraudulently Pass, Attempt to Pass, Possess, and Conceal Falsely Made, Forged

13  and Counterfeited Obligations of the United States, a violation of 18 U.S.C. § 371.  Defendants

14  were arraigned on the Indictment (#13) on August 10, 2007, and pleaded not guilty to both

15  counts.  Min. (##20,21).  Chen Chiang Liu was remanded to custody.  Min. (#20).  Min Li Liu

16  was continued on her present terms of release.  Min. (#21).  Jury trial was set for September 24,

17  2007.  *Id.*

18         On September 7, 2007, the court continued the trial date to December 17, 2007 and

19  excluded the time period from September 24, 2007 until December 17, 2007 pursuant to §

20  3161(h)(8)(A).  Order (#35).  On December 12, 2007, the Grand Jury returned a one-count

21  Superseding Indictment (#53), which fine-tuned Count One of the original Indictment and

22  omitted the conspiracy charge that had been set forth in Count Two.  On December 14, 2007,

23  defendants were arraigned on the Superseding Indictment (#53), and pleaded not guilty.  Min.

24  (#59).  Chen Chiang Liu was remanded to custody.  *Id.*  Min Li Liu was released on conditions

25  previously imposed.  *Id.*

26         On December 20, 2007, the court granted the parties' Stipulation to Vacate and Continue

4

Trial Setting (#60).  Order (#63).  Trial was continued to January 7, 2008, contingent on the availability of the parties, counsel and essential witnesses.  *Id.*  If the parties, counsel of record, or essential witnesses were not available for trial on January 7, 2008, the trial would be continued to January 28, 2008.  *Id.*  The time period from December 18, 2007 until January 28, 2008 was excluded pursuant to § 3161(h)(8)(A).  *Id.*

Jury trial on the Superseding Indictment began on January 28, 2008.  Min. (#72).  The court declared a mistrial that day due to the government's failure to timely disclose cooperating witness Patrick Schwenke to defense counsel.  *Id.*  The court also granted the government's oral motion to dismiss the original Indictment (#13).  *Id.*  On January 29, 2008, the court scheduled the retrial for May 19, 2008 in order to allow defense counsel time to interview the cooperating witness and negotiate a possible plea agreement.  Order (#78) at 4. The time period from January 29, 2008 until May 19, 2008 was excluded pursuant to § 3161(h)(8)(A).  *Id.* at 5.

On April 2, 2008, a Second Superseding Indictment ("SSI") (#79) was filed against defendants.  Count One of the Second Superseding Indictment reintroduced a conspiracy charge that greatly expanded the scope and duration of the conspiracy charged in the original Indictment.  Count Two of the Second Superseding Indictment contained the same charge of passing counterfeit securities that was set forth in the Superseding Indictment.  On May 16, 2008, the court continued the trial date to September 8, 2008 and excluded the time period from May 20, 2008 until September 8, 2008 pursuant to § 3161(h)(8)(A).  Order (#108).

## DISCUSSION

### I. TIME PERMITTED UNDER THE SPEEDY TRIAL ACT

#### A. Applicability of the Los Angeles Case Speedy Trial Clock

Chen Chiang Liu contends that the speedy trial clock has run out as to Count One (Conspiracy) in the Las Vegas case because it is a continuation and reassertion of the charges brought in the Los Angeles case.  Memo (#92) at 5-7.  Since the statutory trial period that began to run under the original accusatory instrument in the Los Angeles case has expired, Chen

5

1    Chiang Liu argues that the corresponding charges in the Las Vegas case violate his speedy trial

2    rights.  *Id.*

3         The Speedy Trial Act provides in pertinent part that, "[i]n any case in which a plea of not

4    guilty is entered, the trial of a defendant charged in an information or indictment with the

5    commission of an offense shall commence within seventy days from the filing date . . . of the

6    information or indictment, or from the date the defendant has appeared before a judicial officer

7    of the court in which such charge is pending, whichever date last occurs."  § 3161(c)(1).

8    Section 3161(h) provides that the "following period[] of delay shall be excluded in computing

9    . . . the time within which the trial of any such offense must commence: (6) If the information

10   or indictment is dismissed upon motion of the attorney for the Government and thereafter a

11   charge is filed against the defendant for the same offense, or any offense required to be joined

12   with that offense, any period of delay from the date the charge was dismissed to the date the

13   time limitation would commence to run as to the subsequent charge had there been no previous

14   charge."  § 3161(h)(6).  However, a superseding indictment that merely restates or makes minor

15   amendments to preceding indictments will not automatically reset the Speedy Trial Act's time

16   limits:

17            In determining whether the Act has been violated, we "must first
              ascertain when the seventy day clock began running."  *United*
18            *States v. Wirsing*, 867 F.2d 1227, 1229 (9th Cir. 1989). We must
              therefore consider the effect the superseding indictments filed in
19            this case had on the running of the STA [Speedy Trial Act] clock.

20            We have held that the filing of a superseding indictment will not
              automatically reset the STA clock where the new indictment does
21            not charge a new crime, but only corrects a defect in the original
              indictment.  *See United States v. Karsseboom*, 881 F.2d 604, 607
22            (9th Cir. 1989); *United States v. Clymer*, 25 F.3d 824 (9th Cir.
              1994).  In *Clymer*, we stated that "[a]lthough the grand jury
23            returned a superseding indictment on April 28, 1989, this action did
              not restart the Speedy Trial Act clock. When a superseding
24            indictment contains charges which, under double-jeopardy
              principles, are required to be joined with the original charges,
25            Speedy Trial Act calculations begin from the date of the *original*
              indictment."  25 F.3d at 827 n.2 (emphasis in original). This rule
26            "prevents the government from circumventing the speedy trial

                                              6

1    guarantee by restarting the speedy-trial clock by obtaining
     superseding indictments with minor corrections." *United States v.*
2    *Gonzales*, 897 F.2d 1312, 1316 (5th Cir. 1990).

3    *United States v. King*, 483 F.3d 969, 972 (9th Cir. 2007). Thus, "[w]hether two offenses are

4    required to be joined is determined by whether separate trials would violate the Double Jeopardy

5    Clause." *United States v. Wood*, No. 89-50358, 1993 U.S. App. LEXIS 4309, at *8 (9th Cir.

6    filed Feb. 23, 1993) (citations omitted).

7         "The Double Jeopardy Clause prohibits subdivision of a single
          criminal conspiracy into multiple violations of one conspiracy
8         statute." *United States v. Montgomery*, 150 F.3d 983, 989 (9th Cir.
          1998) (internal quotations and citation omitted). Because all three
9         conspiracy counts in this case violate the same statute . . . this court
          uses the five-factor test adopted in *Arnold v. United States*, 336
10        F.2d 347, 350 (9th Cir. 1964), rather than the test articulated in
          *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76
11        L.Ed. 306 (1932). *See United States v. Luong*, 393 F.3d 913, 916
          (9th Cir. 2004), *cert. denied*, 544 U.S. 1006, 125 S.Ct. 1953, 161
12        L.Ed.2d 785 and 1963 (2005); *Montgomery*, 150 F.3d at 990.

13        The *Arnold* analysis has been summarized by *Stoddard*:

14             To determine whether two conspiracy counts charge the
               same offense and so place the defendant in double jeopardy,
15             we consider five factors: (1) the differences in the periods
               of time covered by the alleged conspiracies; (2) the places
16             where the conspiracies were alleged to occur; (3) the
               persons charged as coconspirators; (4) the overt acts alleged
17             to have been committed; and (5) the statutes alleged to have
               been violated.
18
19        111 F.3d at 1454 (internal quotations and citation omitted).

     *United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005).
20
21        When the October 10, 2006 trial date was set in the Los Angeles case, the government

22   calculated and it was stipulated that twenty-one (21) days remained on Chen Chiang Liu's

23   speedy trial clock, and that the last day for trial was October 31, 2006. Exh. 1 to Memo (#92).

     After numerous stipulations, court orders, and continuances excluding time between October
24
25   10, 2006 and April 8, 2008, twenty-one (21) days still remained under the speedy trial clock.

     *Id.* The last day trial could begin was April 29, 2008. *See id.* If Count One in the Las Vegas
26

7

case is, as Chen Chiang Liu asserts, merely a reassertion of the charges brought in the Los

Angeles case, the speedy trial period will not have been reset and will have expired, as more

than seventy (70) days have passed since April 29, 2008.  However, this court finds that the two

cases are distinct under the *Arnold* analysis.

The indictment in the Los Angeles case pertained solely to the named conspirators

dealings with an undercover agent from April 2004 through August 2005, and their alleged

offenses under §§ 470 and 473.  Count One of the indictment alleged:

> Beginning on or about April 5, 2004, and *continuing to on or about the date of this indictment* [i.e., August 17, 2005], *in Los Angeles County*, within the Central District of California, and elsewhere, defendants CHAO TUNG WU, aka "John Wu," aka "Thomas Want," aka "James" ("WU"), PAUL TAK CHUNG YEUNG, aka "Paul T.C. Yeung," aka "Paul Hsu" ("YEUNG"), CHEN CHIANG LIU, aka "Wilson Liu" ("LIU") and THI HONG LAN, aka "Sam," aka "Mike" ("LAN"), and others known and unknown to the Grand Jury, conspired and agreed with each other to (1) make, deal and possess counterfeit United States currency outside of the United States, *in violation of Title 18, United States Code, Section 470*; and (2) buy, sell, exchange, transfer, receive, and deliver counterfeited obligations and securities of the United States, namely, counterfeit United States currency, with the intent that the same be passed, published, and used as true and genuine, *in violation of Title 18, United States Code, Section 473*.

Opp'n (#102) at 4 (emphasis added).  While these allegations are incorporated in the SSI (#79)

filed in the Las Vegas case, the conspiracy allegations in the SSI (#79) are broader in

geographical scope, duration, and the statutes alleged to have been violated.  Count One of the

SSI (#79) charges:

> Beginning on a date unknown, but not later than April 2004, and *continuing through July 30, 2007*, *in Nevada*, California, and elsewhere within the jurisdiction of this Court,
>
> CHEN CHIANG LIU and
> MIN LI LIU,
>
> the defendants herein, knowingly combined, conspired, and agreed with one another, Chao Tung Wu (a.k.a., "John Wu," "Thomas Wang," and "James"), Paul Tak Chung Yeung (a.k.a. "Paul T.C. Yeung" and "Paul Hsu"), Thi Hong Lan (a.k.a. "Sam" and "Mike"), and others known and unknown:

8

(a) To make, deal, and possess counterfeit United States currency outside of the United States, in violation of Title 18, United States Code, Section 470;

(b) To buy, sell, exchange, transfer, receive, and deliver counterfeited obligations and securities of the United States, to wit: counterfeit Federal Reserve Notes in the denomination of one hundred dollars ($100), with the intent that the same be passed, published, and used as true and genuine, in violation of Title 18, United States Code, Section 473;

(c) To bring into the United States, keep, conceal, pass, utter, publish and sell, counterfeited obligations of the United States, to wit: counterfeit Federal Reserve Notes in the denomination of one hundred dollars ($100), with the intent to defraud, *in violation of Title 18, United States Code, Section 472.*

SSI (#79) (emphasis added). Additionally, the overt acts alleged in the SSI (#79) encompass not only the conspirators' alleged dealings with an undercover agent in 2004 and 2005, but also the conspirators' alleged dealings with a subsequently identified cooperating witness. *Id.* at 6-8. Based on the foregoing, the court finds that the speedy trial clock that began to run in the Los Angeles case is inapplicable to the conspiracy charged in Count One of the SSI (#79) filed in the Las Vegas case.

**B. The Las Vegas Case Speedy Trial Clock**

Chen Chiang Liu contends that the dismissal of the conspiracy charged in the original Indictment (#13) in the Las Vegas case tolled the speedy trial clock and it resumed, but was not reset, upon his arraignment on the SSI (#79) on April 18, 2008. Memo (#92) at 7-10 (citing § 3161(h)(6)). If the SSI (#79) did not reset the speedy trial clock triggered by Chen Chiang Liu's arraignment on the original Indictment (#13), the time permitted under the Speedy Trial Act will have expired before he is brought to trial (scheduled for September 8, 2008). *See id.*; *see also* Order (#108). Min Li Liu makes the same argument. Inasmuch as she was not a defendant in the Los Angeles case, she argues that the limits prescribed by the Speedy Trial Act are to be measured by the events in the Las Vegas case, and not by the Los Angeles case speedy trial clock. Mot. (#93) at 7-12.

9

Section 3161(h)(6) provides:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> . . . .
>
> (6) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant *for the same offense, or any offense required to be joined with that offense*, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

(Emphasis added).

Count Two of the original Indictment (#13) read in pertinent part:

> Beginning on a date unknown, but *not earlier than March 2007*, and continuing through July 30, 2007, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,
>
> CHEN CHIANG LIU and
> MIN LI LIU,
>
> the defendants herein, willfully and knowingly did combine, conspire, and agree with one another and other persons *to commit an offense against the United States under Title 18, United States Code, Section 472*, that is to fraudulently pass, attempt to pass, possess, and conceal falsely made, forged and counterfeited obligations of the United States, to wit: counterfeit Federal Reserve Notes in the denomination of one hundred dollars ($100).
>
> ### Objects and Means of the Conspiracy
>
> The defendants and others combined for the common purposes of enriching themselves through, among other things, the fraudulent use of counterfeit Federal Reserve Notes to obtain genuine United States currency and other things of value. Towards these ends, the conspirators manufactured or obtained high quality counterfeit Federal Reserve Notes. The conspirators used the counterfeit notes to gamble or place wagers at casinos. In this manner, the conspirators introduced the counterfeit Federal Reserve Notes into commerce and obtained genuine United States currency.

(Emphasis added).

10

In contrast, Count One of the SSI (#79) alleges:

> Beginning on a date unknown, but *not later than April 2004*, and continuing through July 30, 2007, in Nevada, *California*, and elsewhere within the jurisdiction of this Court,

> CHEN CHIANG LIU and
> MIN LI LIU,

> the defendants herein, knowingly combined, conspired, and agreed with one another, *Chao Tung Wu (a.k.a., "John Wu," "Thomas Wang," and "James"), Paul Tak Chung Yeung (a.k.a. "Paul T.C. Yeung" and "Paul Hsu"), Thi Hong Lan (a.k.a. "Sam" and "Mike")*, and others known and unknown:

> (a) *To make, deal, and possess counterfeit United States currency outside of the United States, in violation of Title 18, United States Code, Section 470*;

> (b) *To buy, sell, exchange, transfer, receive, and deliver counterfeited obligations and securities of the United States, to wit: counterfeit Federal Reserve Notes in the denomination of one hundred dollars ($100), with the intent that the same be passed, published, and used as true and genuine, in violation of Title 18, United States Code, Section 473*;

> (c) To bring into the United States, keep, conceal, pass, utter, publish and sell, counterfeited obligations of the United States, to wit: counterfeit Federal Reserve Notes in the denomination of one hundred dollars ($100), with the intent to defraud, in violation of Title 18, United States Code, Section 472.

### Objects and Means of the Conspiracy

The defendants and others combined for the common purposes of enriching themselves by procuring counterfeit United States Federal Reserve Notes in the denomination of one hundred dollars ($100) which they sold or exchanged for genuine United States currency. Often referred to as "Supernotes," *the conspirators traded in high quality counterfeit one hundred dollar bills manufactured by unidentified suppliers and co-conspirators outside of the United States.*

*As part of the conspiracy, members of the conspiracy and their associates sold, exchanged, transferred and delivered such Supernotes in transactions that were conducted both within and outside of the United States. As part of the conspiracy, the conspirators and their confederates brought thousands of Supernotes into the United States.* The defendants received, knowingly kept, and concealed a portion of those counterfeit notes.

11

> As a further part of the conspiracy, one or more of the conspirators passed, uttered, and transferred counterfeit Federal Reserve Notes in exchange for goods, services, genuine United States currency, and other things of value. In this manner, the conspirators enriched themselves and introduced the counterfeit Federal Reserve Notes into commerce.

(Emphasis added).

The overt acts alleged in Count One of the SSI (#79) include not only the conduct addressed in the original Indictment (#13), but also the conspirators' alleged dealings with the undercover agent in Los Angeles, *see* SSI (#79) at 3-5; the conspirators alleged dealings with a cooperating witness, *see id.* at 6-8; and the conspirators alleged continuous activities at Las Vegas casinos from 2005 through 2007, *see id.* at 8-9. The conspiracy charged in the SSI (#79) is, then, not the "same offense" as the narrowly drawn charge in the original Indictment (#13). Hence, the speedy trial clock was reset upon defendants' arraignment on the SSI (#79) on April 18, 2008.  Since the court has excluded January 29, 2008 until September 8, 2008 pursuant to the Speedy Trial Act, *see* Order (##78,108), the speedy trial clock in the Las Vegas case has not expired and will not expire before trial is scheduled to begin.  *See* Order (#108).

## II. Pre-Indictment Delay

Defendants also contend that they have been prejudiced by unnecessary pre-indictment delay.  Memo (#92) at 13-16; Mot. (#93) at 12-15.  Specifically, defendants argue that the government's purported delay in bringing the additional conspiracy charge in the SSI (#79) has prejudiced them.  *Id.*  Defendants mistakenly ground their argument on the Sixth Amendment, which applies to post-indictment delay, not pre-indictment delay.  Whether pre-indictment delay warrants dismissal of an indictment is to be evaluated under Fifth Amendment due process standards.  The Due Process Clause of the Fifth Amendment requires dismissal of an indictment upon a showing that "pre-indictment delay . . . caused substantial prejudice to [an accused's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971) (citation omitted); *accord*

1   *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (recognizing that prejudice resulting from

2   pre-indictment delay is alone insufficient to warrant dismissal).  *See also* Fed. R. Crim. P.

3   48(b)(3) ("The court may dismiss an indictment . . . if unnecessary delay occurs in bringing a

4   defendant to trial.").  In this case, no such agenda is apparent.

5          The crimes charged in the SSI (#79) were neither complete nor fully known to the

6   government at the time of Chen Chiang Liu's first arrest in August 2005.  Opp'n (#102) at 23.

7   Chen Chiang Liu's alleged passing of Supernotes at Las Vegas casinos, and Min Li Liu's

8   alleged participation in the purported conspiracy, were exposed, according to the government,

9   only after defendants were apprehended at Caesars Palace Las Vegas in July 2007.  *Id.*

10   Moreover, it was not until late 2007 that investigators learned the full scope of defendants'

11   activities in Nevada and their place within the continuing conspiracy charged in the SSI (#79).

12   *Id.*  The delay in bringing the new and comprehensive charge was from approximately

13   December 2007 to April 2008.  Such delay, under the complicated facts of this case, does not

14   suggest improper motive on the part of the government.

15          Nor has any pre-indictment delay in the Las Vegas case caused defendants substantial

16   prejudice.

17                  [A] defendant's Fifth Amendment right to due process is not
                    infringed in the absence of a showing of actual, definite and non-
                    speculative prejudice arising from the delay. *United States v.*
18                  *Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) and
                    *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d
19                  752 (1977), make it clear that actual prejudice is a necessary part
                    of the showing required, *Lovasco*, 431 U.S. at 789-90, 97 S.Ct. at
20                  2048- 49, and we have emphasized that showing actual prejudice
                    entails proof by "definite and non-speculative evidence" that loss
21                  of testimony has meaningfully impaired the defendant's ability to
                    defend himself. *United States v. Huntley*, 976 F.2d 1287, 1290 (9th
22                  Cir. 1992) (commenting that the showing is "'so heavy' that we
                    have found only two cases since 1975 in which any circuit has
23                  upheld a due process claim.").

24   *United States v. Bischel*, 61 F.3d 1429, 1436 (9th Cir. 1995).

25          Defendants contend that a potential defense witness, Thi Hong Lan, has been lost to

26   them.  Memo (#92) at 16; Mot. (#93) at 15.  Thi Hong Lan was indicted together with Chen

Chiang Liu as a member of the conspiracy charged in the Los Angeles case.  *See* Min. (#24) in Los Angeles case.  The government disclosed the substance of Thi Hong Lan's testimony in a letter faxed to defense counsel on January 17, 2008:

> I have recently learned that another cooperating witness has come forward with information relevant to this case. More particularly, when questioned about Chen Chiang Liu's conduct in Nevada, a cooperating witness has disclosed that he previously traveled with Chen Chiang Liu and Min Liu to Nevada, and that Chen Chiang Liu instructed the witness to launder counterfeit or fake currency through slot machines and similar devices in Nevada. This witness also recounts that Chen Chiang Liu instructed him not to discuss the scheme with Min Li Liu. However, the witness adds that he has reason to believe that Min Li Liu was aware of and participated in the scheme. Further, any claims of naivete or good faith that Min Li Liu might once have asserted were extinguished following Chen Chiang Liu's arrest and indictment in the Central District of California. Nonetheless, I am disclosing the nature of the witness's prospective testimony as it could arguably be exculpatory. Because this witness resides in another district, I am unfamiliar with any concerns regarding his security and will disclose his identity once this matter has been addressed.

Opp'n (#102) at 24-5.  On January 23, 2008, the government disclosed the identity of Thi Hong Lan to defense counsel.  *Id.*  At some time around January 23, 2008, Thi Hong Lan vanished and his whereabouts and condition remain unknown.  Defendants fail to demonstrate that the government is in any way responsible for Thi Hong Lan's disappearance.  Moreover, any delay in bringing the new and additional charges in the SSI (#79) did not prejudice defendants, as Thi Hong Lan disappeared before the already established trial setting of January 28, 2008.  *See* Order (#63).

. . .
. . .
. . .
. . .
. . .
. . .

14

1

**RECOMMENDATION**

2          Based on the foregoing, it is the recommendation of the undersigned U.S. Magistrate

3   Judge that the motions to dismiss (##91,93,96) should be denied.

4          DATED this 4th day of August, 2008.

5

6          _____

7          **LAWRENCE R. LEAVITT**
           **UNITED STATES MAGISTRATE JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26